T. A. Johnson, J.
The fact having been disclosed by the plaintiffs’ evidence that the note in question was in blank, and was filled up with "the amount by one of the makers when it was delivered, it was competent for the plaintiffs to show that the defendant had, before that tune, delivered notes to the same maker, indorsed in blank in like manner, to be used in the business of the firm to which such maker belonged. This evidence was not competent on the question of handwriting, nor was it offered for that purpose. But it was clearly competent on the question of' the authority of the maker to fill up and use the paper "-as he did. The case does not show for what particular purpose the evidence was offered, and the objection is general. If, therefore, the evidence was competent for any purpose, the presumption is that it was offered and received for the proper object.
The evidence offered by the defendant of his bank checks was properly excluded. This offer obviously contemplated a comparison, by the jury, of the signatures to the checks with that indorsed upon the note, as one test of the genuineness of the latter. This has, I believe, never been allowed in this state. Our courts have adopted the English rule, which, excludes such comparisons by the jury, as evidence to prove or disprove the handwriting of a party, and the opinions of witnesses founded thereon. (Wilson v. Kirkland, 5 Hill, 182; Jackson v. Philips, 9 Cow., 94; Olmsted v. Stewart, 13 John., 238; Jackson v. Van Dusen, 5 id., 155, Titford v. Knott, 2 John. Cas., 211.) A different rule prevails in several of our sister states. The true rule, I apprehend, on this subject, is that laid down in Doe v. Newton (5 Adolph. & Ellis., 514), that where different instru ments are properly in evidence for other purposes, the handwriting of such instruments may be compared by the jury, and the genuineness or simulation of the handwriting in question be inferred from such comparison. But other *443 instruments or signatures cannot be introduced for that purpose.
The questions arising upon the cross-examination of the defendant’s witnesses, respecting the genuineness of the handwriting indorsed upon the two notes exhibited by the plaintiffs’ counsel, and the proof of the handwriting thus indorsed, have.little if any relation to the question of comparison of handwritings by witnesses or by a jury. The plaintiffs’ counsel did not propose or offer to submit them to the jury to inspect. His object plainly was, in case they should testify, as they did, that the handwriting on these notes was not genuine, to contradict them by other evidence and show that it was genuine, and then ask the jury to infer that they were mistaken, or had misjudged in respect to the handwriting in issue, because he had proved they were mistaken in respect to that not in issue. This was precisely what was allowed. It was in the nature of impeaching evidence, not direct, but indirect and argumentative. The fact, even if established, that the defendant indorsed the two notes thus exhibited, had no direct bearing upon the credibility of the defendant’s witnesses, and only affected their credit incidentally and remotely. Facts hearing directly upon the credibility of witnesses are material to the issue, and witnesses may be cross-examined in regard to such facts, and may be contradicted, if they deny the truth, by other evidence. (Newton v. Harris, 2 Seld., 345.) Hostile feelings on the part of the witness towards the party he is called to testify against, and interest in the action or question in litigation, belong to this class.
But the evidence as to the handwriting on the two no'tes was wholly collateral, and in no respect material to the issue. In Griffits v. Ivery (11 Adolph. & Ellis., 322), it was held that signatures, other than the one in issue, could not be shown to witnesses on cross-examination for the purpose of testing their knowledge of the defendant’s handwriting *444 by their agreement or disagreement. And in Hughes v. Rogers' Executors (8 Mees. & Wells., 123), where the witness had been examined in regard to the signature of an attesting witness to a paper not in evidence in the action, and had testified it was not the signature of such attesting witness, it was held that the plaintiff could not, by other witnesses, prove that such paper was signed by other attesting witness in their presence, as it tended to raise a collateral issue. The practice allowed upon the trial has, doubtless, prevailed quite extensively at the circuit, but it is obviously subject to very grave objections, and ought not to be sanctioned. The real issue was made to depend, in no inconsiderable degree, upon the collateral issue made upon the signature to other papers in no way connected with the action. The jury were, in effect, instructed that they might discredit the testimony of the defendant’s witnesses, if they were perfectly convinced that the defendant had admitted the signatures indorsed upon the two notes to be genuine. It is a familiar rule of evidence that a party cannot examine witnesses upon collateral subjects, for the purpose of showing afterwards that they are mistaken. And if he does examine them on such subjects, he cannot contradict their testimony, by other witnesses, for the purpose of discrediting it. I am of opinion, therefore, that the ruling allowing the cross-examination in regard to the two notes, and also that permitting the testimony given on such cross-examination to be contradicted, and the signatures to be proved, was erroneous; and that the judgment of the, supreme court should be reversed and a new trial granted, with costs to abide the event.
A. S. Johnson, J.
A witness on the part of the defence, who had become acquainted with the handwriting of the defendant by seeing him write, testified that the signature to the indorsement in suit was not that of the defendant. ■Upon cross-examination he was shown certain signatures, *445 likewise purporting to be the defendant’s, upon papers not relevant to nor in evidence in the cause, and was asked under objection whether they were the signatures of the defendant. He answered that they were not. The plaintiffs afterwards, under objection, gave evidence legally tending to show that the genuineness of these latter signatures had been admitted by the defendant.
The first inquiry was put with one of two views, suited to the two answers which the witness might give. In case he affirmed the genuineness, to contend to the jury that these and the indorsement in question were in the same handwriting, or, if he denied their genuineness, to contradict him upon that point by other witnesses. The first of these questions was presented to the king’s bench in Doe v. Newton (5 Adolph, & Ellis., 514), and it was decided, all the judges agreeing, that.the jury could not institute a comparison between the signature in question and other signatures, unless these last were relevant evidence in the cause. The decision was put upon the grounds that the issue, as to the genuineness of the documents produced for the purpose of comparison, was collateral and irrelevant, and that there was great danger of unfair selection of specimens of handwriting. Griffits v. Ivery (11 Adolph. & Ellis., 322) and Hughes v. Rogers (8 Mees. & Wells, 123) cover whatever remained undecided of the questions here presented, after the decision in Doe v. Newton. In the first of those cases, the question being upon the genuineness of the defendant’s signature, and witnesses being called for him, and deposing that the signiture in question was not his, the plaintiff proposed to ask each witness as to another paper, not in evidence for any other purpose, whether it was signed by the defendant, to the end that their agreement or disagreement might be considered by the jury in measuring the witness’ knowledge of the handwriting of the party. The evidence was rejected. On refusing a rule for a new trial, Coleridge, J., said: “ Wé must not allow papers which are not evidence *446 in the cause to be let in for any purpose whatever. It is said that this was offered merely for the purpose of trying the knowledge of the witnesses; but the inquiry would not stop there. It would be impossible to keep from the jury questions whether this or that paper was or was not in fact written by the party.” Lord Denman, C. J., said: “It would be ludicrous to suppose that a paper may be used for the purpose suggested, and that a jury must then be told that they cannot look at it to see how far its appearance supports the evidence of the witnesses. But if they did look at it, all the unlimited multiplicity of questions would come before them, which we meant to shut out by our ruling in Doe v. Newton.”
In Hughes v. Rogers (supra), which was an action upon a bond, the plaintiff called a witness to prove the signature of an attesting witness who was dead. The witness stated that the signature was not in the handwriting of the deceased attesting witness. He was then shown another paper, not in evidence in the cause, and being asked, denied that it was the handwriting of the attesting witness. It was then proposed to prove, by witnesses, that this second paper, had been signed by the attesting witness in their presence. The evidence was excluded, and the ruling was afterwards held in banc to be correct, upon the principle that to have received it would have raised a collateral issue.
These cases are, it is true, not of a binding authority in this court; but the principle which they apply, of confining the trial to the issues in the cause, is sound and familiar. It was applied to a question belonging to this subject, in Jackson v. Phillips (9 Cow., 94), where the plaintiff, who disputed the genuineness of the signature of a deed, called a witness who had seen the party write, and who stated the signature in question to be not genuine, and offered to prove by him another writing to be genuine, in order to submit it with the deed to the jury. It was rejected, and the ruling was afterwards approved, both upon the *447 ground of danger of unfairness in the selection of specimens, and of the inconvenient length to which such collateral inquiries would run. Undoubtedly, a witness who speaks to handwriting affirms that he knows the handwriting of the party, and that the particular writing is or-is not his. Each branch of his testimony is material, and the one as material as the other. He may be contradicted as to his knowledge; may be cross-examined as to how he acquired it, and may be contradicted in all the .particulars on which his pretended knowledge is founded. • If he bases his knowledge on having seen the party write, it might be shown that it was some other person, and not the party whom he saw write; or if his knowledge was professedly founded upon correspondence \vith the party, this might be proved to be erroneous or untrue. His knowledge may unquestionably be experimented upon, but a fact irrelevant to the issue cannot be introduced into the cause, and tried for the sake of so experimenting in regard to it. The credit of a witness is always in issue; yet nothing is clearer law than if a witness is asked as to' an irrelevant fact, and answers, lie cannot be contradicted in respect to it. So even in the case of an expert, called upon a trial where the issue was whether two machines were identical in principle, it was held that he could not, on cross-examination, be examined as to another machine, and be called on to point out how far it differed in principle from those first alluded to, though the purpose was stated to be to show by his answers and by other testimony the incorrectness of the witness in his previous examination and in his knowledge of mechanics. Judge Story held the inquiries irrelevant, and that if answered they would not authorize the contradiction of the witnesses. (Odiome v. Winkley, 2 Gallison, 53.)
Whether the two notes were or were not genuine was immaterial. A written admission of their genuineness by the party would have had no bearing upon the question *448 of the genuineness of the note in suit. Nor would it furnish even moral evidence upon the subject. The fact is brought into the cause, solely because the witness has spoken about them in his testimony, and by that means only does the inquiry as to their genuineness assume any significance. Now, a witness’ credit may be attacked, by showing a want of knowledge or a perverse use of his knowledge; one is as material as the other, and the inquiry must be confined within the same legal bounds in each case. Suppose the plaintiff’s theory was that the witness denied the signature in suit to be the defendant’s, perversely and wickedly, could it be pretended that he could be interrogated as to the other signatures, and contradicted if he also denied them? The argument in favor of that course might be just that which is presented in this case, that as to those signatures the plaintiff is prepared with conclusive evidence to contradict him. The legal answer to both propositions is, that the inquiry was not relevant to the issue on trial, and that it involved the trial of a new issue, which again might give rise to other new issues without end.
It is quite true that the proof of handwriting by witnesses who have not seen the very paper written, is among the most unsatisfactory parts of evidence, resting, as it always does, upon presumptions of greater or less infirmity. It is possible that some mode of comparison of the disputed writing with genuine specimens, fairly selected, might result in more accurate determination; but until the legislature shall introduce it, properly guarded as to the fairness and genuineness of the specimens to be employed, it cannot be introduced into the common law of this state.
The French code excludes, as standards of comparison, private writings not admitted to he genuine in the cause (Doe v. Suckermon, 5 Adolph. & Ellis., 703), while we could frame no limit to the kind of evidence by which the writings, to serve as standards, should be proved. If the courts admit them at all, and in any case, they are of right *449 provable by no other rules than those which apply to writings generally, and thus the genuineness of the standards would, except in accidental cases, be just as uncertain as that of the writings whose genuineness they were introduced to test. Under such a state of things, I think the rule a wise one which excludes the inquiries as remote and irrelevant.
The judgment should be reversed and a new trial ordered.
All the judges concurred in the foregoing opinions.
Judgment reversed.